UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APERIA SOLUTIONS, Inc., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:18-CV-03276-X |
| THE OLB GROUP, Inc., et. al., | § § § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

On December 12, 2019, defendants the OLB Group, Inc. ("OLB") and eVance, Inc. (collectively, "defendants") filed a motion to dismiss seeking to dismiss plaintiff Aperia Solutions, Inc.'s ("Aperia") breach of contract, quantum meruit, unjust enrichment, fraud, fraudulent inducement, suit on sworn account, and promissory estoppel claims [Doc. No. 38]. Upon consideration, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion to dismiss.

I.

On approximately July 1, 2016, Aperia and eVance Processing, Inc. ("eVance Processing") entered into a General Services Agreement, which provided internet-based reporting and management systems for eVance Processing. A year later eVance Processing started to fall behind on its payments to Aperia under the General Services Agreement. Although later that year eVance Processing and Aperia had agreed on a plan that would bring eVance Processing up to speed on its payments, Aperia alleges OLB purchased substantially all eVance Processing's assets through a

1

foreclosure on April 9, 2018 through its subsidiaries, including eVance, Inc. Aperia alleges that eVance Processing owed it approximately $56,847.84 (the "Outstanding Debt") at the time of the foreclosure. Aperia alleges that the memorandum of sale, which memorialized the foreclosure sale, includes the General Services Agreement but does not impose any obligation on OLB or eVance, Inc. to pay the Outstanding Debt.

In the same month as the foreclosure, Patrick Smith from eVance, Inc., who was formerly employed at eVance Processing, asked Aperia to continue to provide its services. Aperia alleges it told Smith that before it would provide any services, eVance Processing's Outstanding Debt would need to be accounted for in some manner. Aperia alleges that Smith agreed that eVance, Inc. and OLB would pay the Outstanding Debt and stated in subsequent e-mails that they would "get caught up as soon as possible" on the Outstanding Debt and that they "will get [Aperia] paid."[1] As a result of this alleged agreement, Aperia continued to provide its services from April 2018 to September 2018.

Aperia alleges that defendants stopped making payments after July 17, 2018 and so, in August, Aperia informed defendants that it was terminating the General Services Agreement for non-payment of invoices. On September 18, 2018, an eVance, Inc. employee informed Aperia that it was discontinuing Aperia's services. Aperia responded by sending a demand for payment invoices for services provided. OLB e-mailed back disputing that it owed any money for the Outstanding Debt and that "OLB Group tried to negotiate a new agreement with Aperia for Aperia's services with

---

[1] Aperia's Third Amended Complaint, Exhibit H [Doc. No. 38]; Aperia's Third Amended Complaint ¶14 [Doc. No. 38].

2

the parties could resolve their differences without court intervention. In a later e-mail, counsel for defendants argued that eVance, Inc. only owed money for services provided in May though July of 2018 and that the payments eVance, Inc. had made earlier were made for these services and not for the Outstanding Debt. After some more back and forth, Aperia filed suit in this Court on December 13, 2018 and subsequently amended its complaint three times. The Court now considers the defendants' pending motion to dismiss Aperia's third amended complaint.

## II.

The defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), the Court evaluates the pleadings by "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor."[3] To survive a motion to dismiss, Aperia must allege enough facts "to state a claim to relief that is plausible on its face."[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] A complaint does not suffice "if it tenders naked assertion[s] devoid of further factual enhancement."[6] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[7] "[W]here the well-pleaded facts do not permit the

---

[2] Aperia's Third Amended Complaint, Exhibit T [Doc. No. 38]; Aperia's Third Amended Complaint ¶20 [Doc. No. 38].

[3] *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.* (quotation marks omitted) (alteration in original).

[7] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

courts infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[8]

III.

A.

Defendants argue in their motion to dismiss that Aperia has failed to plausibly state a breach of contract claim against eVance, Inc. under the General Services Agreement for failing to pay for services Aperia provided from April 2018 to September 2018, along with other fees. Defendants contend that eVance, Inc. has paid for these services and that Aperia's argument rests on two faulty allegations: (1) the allegation that eVance, Inc.'s payments were directed to eVance Processing's Outstanding Debt—which eVance, Inc., through its employee Smith, orally agreed with Aperia to pay—and (2) the allegation that the services provided after April 2018 were provided pursuant to the General Services Agreement.

Defendants dispute both allegations. Regarding the Outstanding Debt, defendants argue that Aperia has not sufficiently pled that eVance, Inc.'s alleged oral agreement to pay for the Outstanding Debt is enforceable. Regarding the applicability of the General Services Agreement, defendants argue eVance, Inc. is not subject to that agreement because it was never incorporated in the foreclosure sale memorandum transferring eVance Processing's assets to eVance, Inc. Defendants conclude that eVance, Inc.'s payments were therefore not for the Outstanding Debt but only for the services Aperia provided, which were fully paid and not governed by the General Services Agreement.

Aperia objects that it has sufficiently alleged that (1) eVance, Inc.'s oral

---

[8] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. Rule 8(a)(2)).

4

agreement. The Outstanding Debt is about the General Services Agreement was incorporated in the sale memorandum and that eVance, Inc. is governed by it. Aperia concludes that eVance Inc.'s payments were for the Outstanding Debt and that it therefore breached the General Services Agreement by failing to pay for services rendered from April 2018 to September 2018, along with other fees. The Court agrees with Aperia.

In showing how Aperia has sufficiently alleged the General Services Agreement has been breached, the Court must first explain how the alleged oral agreement between Aperia and eVance, Inc. is enforceable. The Court will then explain how, as alleged, eVance, Inc. has breached the General Services Agreement.

1.

Before the Court can evaluate whether Aperia has sufficiently pled that eVance, Inc. breached the General Services Agreement, the Court must first determine whether Aperia has sufficiently pled an enforceable, oral agreement to pay the Outstanding Debt. Texas Business & Commerce Code § 26.01 states that "a promise by one person to answer for the debt . . . of another person" is "not enforceable unless the promise or agreement . . . is in writing." An exception to this provision is the main purpose doctrine, which requires that:

> (1) the promisor intended to create primary responsibility in itself to pay the debt; (2) there was consideration for the promise; and (3) the consideration given for the promise was primarily for the promisor's own use and benefit—that is, the benefit it received was the promisor's main purpose for making the promise.[9]

The Court concludes Aperia has sufficiently pled under the main purpose doctrine that eVance, Inc. agreed to pay the Outstanding Debt. Aperia alleges in its

---

[9] *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 828 (Tex. 2012).

5

company that would therefore directly provide their services to eVance, Inc. Aperia alleges that it would not provide any services until eVance Processing's Outstanding Debt would be accounted for. In response, Aperia alleges Smith agreed that eVance, Inc. would pay the Outstanding Debt and stated in subsequent e-mails that it would "get caught up as soon as possible" on the Outstanding Debt and that it "will get [Aperia] paid."[10] As a result of this agreement, Aperia alleges it decided to provide its services from April 2018. Taking these allegations as true, eVance, Inc.'s agreement to assume the Outstanding Debt in exchange for Aperia's services, which primarily benefited eVance, Inc., meets the requirements of the main purpose doctrine. The Court concludes these allegations are sufficient for the motion to dismiss stage to show that Aperia and eVance's alleged oral agreement is enforceable.

Defendants object that the main purpose doctrine does not apply because Aperia fails to properly allege who benefitted from the agreement. Defendants rely on Aperia's constant use of the phrase "OLB and/or eVance, Inc." in its complaint to describe the counterparties to the agreement to illustrate its point.[11] The Court finds this objection unavailing. Under the motion to dismiss standard, the Court, accepting the alleged facts as true, must draw "all inferences in the plaintiff's favor."[12] As the pleadings unambiguously allege Smith was an employee at eVance, Inc., the Court draws the inference that Aperia is alleging that its agreement was with at least eVance, Inc. Aperia is therefore at least alleging that eVance, Inc. directly benefited

---

[10] Aperia's Third Amended Complaint, Exhibit H [Doc. No. 38].

[11] Aperia's Third Amended Complaint ¶¶12–16 [Doc. No. 38].

[12] *Biro*, 807 F.3d at 544 (2d Cir. 2015) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11) (2d Cir. 2010)).

6

from the doctrine. For these reasons, the Court concludes that Aperia has sufficiently alleged that there was an oral agreement between Aperia and eVance, Inc. and that it was enforceable.

2.

Aperia has plausibly stated a claim that eVance, Inc. has breached the General Services Agreement. In order to determine whether the General Services Agreement has been breached, the Court must examine whether the foreclosure sale memorandum incorporates the General Services Agreement, which would consequently subject eVance, Inc. to its terms.

This case has the potential for more than one state's law to apply. Specifically, the sale memorandum has a choice of law clause stating that "[t]his Agreement . . . will be governed and construed in accordance with the internal Laws of the State of New York."[13] District courts only have to engage in choice of law analysis when there is a conflict between the laws of the states and, in circumstances where a choice of law clause is present, the party contesting the choice of law clause has the burden to show it should not be enforced.[14] Where choice of law analysis is necessary, district courts must apply the choice of law framework from the forum state—Texas in this case—to decide which state's law applies.[15] Here, there is no indication of a conflict between Texas and New York law on any point material to resolving Aperia's breach of contract claim. As a result, the Court will cite to Texas and New York law in

---

[13] Aperia's Third Amended Complaint, Exhibit F at 15 [Doc. No. 38].

[14] *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990). *Jimenez v. Sun Life Assur. Co. of Canada*, 486 F. App'x 398, 408 (5th Cir. 2012).

[15] *Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002).

7

Under Texas law, "the interpretation of an unambiguous contract is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."[17] Texas rules of contract interpretation require courts to look to the four corners of a contract and language is only ambiguous if both parties' interpretations are reasonable.[18]

The Court concludes Aperia has plausibly shown that the sale memorandum incorporates the General Services Agreement and that the General Services Agreement has been breached. "In Texas, the elements of a claim for breach of contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach."[19] The principal dispute between the parties is whether the General Services Agreement is an "Acquired Asset" as defined in section 2.1 of the sale memorandum, which would consequently make the General Services Agreement a valid contract between eVance, Inc. and Aperia. Under section 2.1, Acquired Assets means "all of the right, title and interest

---

[16] The parties should bear in mind choice of law as this case progresses.

[17] *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (quotation marks omitted).

[18] *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743–44 (Tex. 2020), reh'g denied (Apr. 17, 2020). New York law has similar contract interpretation principles. Under New York law, contract interpretation is a matter of law "where it is unambiguous and the intent of the parties is discernable from the four corners of the document." *Lester's Activewear, Inc. v. Combine Distrib. Inc.*, 2010 WL 1293733 at *2 (Sup. Ct. 2010). Contract interpretation requires a court to look to the contract and give all "words and phrases . . . their plain meaning." *Gary Friedrich Enter., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) (quotation marks omitted). Particular phrases in a contract must be interpreted "in light of the parties' intent as manifested by the contract as a whole." *Id.* The terms of a contract are only ambiguous if they are subject to multiple reasonable interpretations after examining the contract as a whole. *Id.*

[19] *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 669 F. App'x 219, 220 (5th Cir. 2016) (quotation marks omitted). The elements for breach of contract in New York are similar: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*, 156 F. App'x 349, 350–51 (2d Cir. 2005).

8

of [eVance Processing] and of every type or period of time and whether tangible or intangible, real or personal[.]"[20] Section 2.1 goes on to say it "includ[es] all right, title and interest" of eVance Processing's assets and provides a list of those assets, which includes General Intangibles, which in turn includes "contracts rights."[21]

The Court concludes that, looking at the phrase "General Intangibles" in the context of the entire sale memorandum, Aperia has plausibly shown that the General Services Agreement is a general intangible and so is an Acquired Asset. Both Acquired Asset and General Intangibles use the word "include" in describing what assets fall under them. Section 10.3(b) of the sale memorandum states that any use of the word "include" in the agreement is non-exclusive.[22] Section 10.3(b) read together with section 2.1 means that the assets listed under Acquired Asset and General Intangibles under section 2.1 are not exhaustive. Although the word "contract" is not specifically listed in section 2.1, looking at the definition of Acquired Asset, a contract would be a "right" or "interest" in eVance's property, specifically an intangible interest.

This interpretation is buttressed by several surrounding provisions. General Intangibles lists contract rights as one of its assets, which in being part of a contract, implies the underlying contract itself is a general intangible. Further, section 2.3 on assumption of liabilities expressly states purchasers, which includes eVance, Inc., must perform "all obligations . . . under Contracts that are Acquired Assets purchased by such Purchaser under Section 2.1."[23] Also, section 2.2(b) on excluded assets states

---

[20] Aperia's Third Amended Complaint, Exhibit F at 4 [Doc. No. 38].

[21] Aperia's Third Amended Complaint, Exhibit F at 4–5 [Doc. No. 38].

[22] Aperia's Third Amended Complaint, Exhibit F at 21 [Doc. No. 38].

[23] Aperia's Third Amended Complaint, Exhibit F at 6 [Doc. No. 38].

9

the contract. Sections 2.2 and 2.3 show the sale memorandum expressly contemplated that contracts were Acquired Assets under section 2.1.

For these reasons, the Court concludes that Aperia has plausibly shown contracts are Acquired Assets under the sale memorandum. As a contract, the General Services Agreement is an Acquired Asset, which would therefore subject eVance, Inc. to its terms, which Aperia also sufficiently alleges eVance, Inc. breached by failing to pay for services provided from April 2018 and September 2018, along with other fees.

Defendants object that Acquired Assets under section 2.1 cannot reasonably be interpreted to include the General Services Agreement because that agreement is a liability and that assets, by definition, must have value and be beneficial to the purchaser. This argument fails to consider the surrounding context of the sale memorandum, which illustrate that an Acquried Asset can include liabilities. Section 2.1 itself states all Acquired Assets must be taken "as is" and "with all faults," which indicates they may have some liabilities.[24] Additionally, section 2.3 states each purchaser "assumes from the applicable Debtor from whom it is acquiring the Acquired Assets under Section 2.1 . . . all obligations of such Debtor to be performed . . . [.]"[25] These obligations the purchasers would have to perform are by nature liabilities.

Lastly, the Court notes that if defendants' interpretation is correct, the sale memorandum would incorporate eVance, Inc.'s "contract rights" to seek services from

---

[24] Aperia's Third Amended Complaint, Exhibit F at 4 [Doc. No. 38].

[25] Aperia's Third Amended Complaint, Exhibit F at 6 [Doc. No. 38].

10

Aperia, which relates to another contract, and to construe it to apply would be a liability. The baby-splitting, contract-splitting approach is not one that the canons of interpretation favor. For these reasons, the Court concludes that Aperia has plausibly shown that eVance, Inc. is both subject to the General Services Agreement and has breached it for failing to pay for services from April 2018 to September 2018, along with other fees.

B.

Defendants argue in their motion to dismiss that Aperia has failed to plausibly state a suit on sworn account claim against eVance, Inc. for failing to pay for invoiced services Aperia provided from April 2018. Defendants argue, as they did with Aperia's breach of contract claim, that the alleged oral agreement between Aperia and eVance, Inc. to pay off the Outstanding Debt is unenforceable and that the payments eVance, Inc. tendered were for the services Aperia provided. Aperia objects that it has sufficiently alleged that eVance, Inc. entered an enforceable agreement to pay off the Outstanding Debt and that, consequently, eVance, Inc. failed to pay for invoiced services provided from April 2018. The Court agrees with Aperia.

As Aperia has sufficiently alleged eVance, Inc. agreed to pay the Outstanding Debt, as discussed in Part A of this section, Aperia has also sufficiently alleged a suit on sworn account claim against eVance, Inc. A suit on sworn account is a common law claim that requires the plaintiff to show "(1) that there was a sale and delivery of merchandise or performance of services; (2) that the amount of the account is just, that is, that the prices were charged in accordance with an agreement or were customary and reasonable prices; and (3) that the amount is unpaid."[26] Aperia's

---

[26] *Daniels v. Lavery*, 2007 WL 549223, at *4 (Tex. App. Feb. 23, 2007); *Noodlenet, LP v.*

allegations—that eVance, Inc. failed to pay for these services—because the payments it did make were only for the Outstanding Debt—are sufficient to show that services were performed and not paid for under the first and third factors. Lastly, Aperia alleges that its invoices to eVance, Inc. constitute an account between the parties and, through an affidavit, states those charges were the usual and customary fees for such services. These allegations are sufficient at this stage of the proceedings to show that the prices were customary and reasonable prices. For these reasons, the Court concludes Aperia has sufficiently alleged a suit on sworn account claim against eVance, Inc.

Defendants object that the suit on sworn account claim is duplicative of Aperia's breach of contract claim and so should be dismissed. Although the relief sought between these claims may overlap, the bases of these claims do not. The breach of contract claim is based primarily on the General Services Agreement whereas the sworn account claim is based primarily on the charges on the invoices. It is also premature to dismiss the sworn account claim at the motion to dismiss stage. Although the Court has concluded that Aperia has sufficiently pled a breach of contract claim, it has by no measure rendered a final judgment on the matter.

The Court thus concludes that Aperia has sufficiently pled a suit on sworn account claim against eVance, Inc. to survive the defendants' motion to dismiss.

C.

Defendants argue in their motion to dismiss that Aperia has failed to plausibly claim that eVance, Inc., through its employee, Smith, committed fraud by misrepresentation or fraudulently induced Aperia by agreeing to pay for eVance

---

*Proctor & Gamble Distrib. LLC*, 2008 WL 11349984, at *2 (N.D. Tex. Nov. 11, 2008) (noting that suit on an account is a common law claim).

Processing Outstanding Debt. A review of objections raised by the parties shows that eVance, Inc. committed fraud by misrepresentation and fraud in the inducement. The Court agrees with defendants.

Under Texas law, fraud by misrepresentation requires a plaintiff to allege "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury."[27] Fraudulent inducement has the same elements but requires the existence of a contract, which, as discussed in Part A, is present here.[28] In cases involving fraud, Federal Rule of Civil Procedure 9(b) also requires the plaintiff to show "the who, what, when, where, and how of a fraud."[29] To defend against a fraud claim, a defendant's showing of partial performance "can negate an intent not to keep a promise at the time it was made."[30]

Aperia has failed to sufficiently allege facts showing that eVance, Inc. committed fraud by misrepresentation or fraud in the inducement. Aperia's complaint alleges that the Outstanding Debt amounted to $56,847.84 and goes on to list the payments made by eVance, Inc., which satisfy the Outstanding Debt in full. Indeed, Aperia expressly acknowledges eVance, Inc. paid the Outstanding Debt in its response to the defendants' motion to dismiss: "The Outstanding Debt became due and payable by Defendant OLB and/or Defendant eVance, Inc. when Smith, Defendants' agent, agreed to pay the Outstanding Debt, and *in fact paid the*

---

[27] *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

[28] *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

[29] *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010) (citing FED. R. CIV. P. 9(b)).

[30] *Id.* at 1035 (5th Cir. 2010) (quoting *IKON Office Sols., Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App. 2003)).

promise at the time it was made," then full performance does so even more.[32] For these reasons, the Court concludes that, taking Aperia's allegations as true, eVance, Inc. did not commit fraud by misrepresentation or fraudulently induce Aperia by agreeing to pay for eVance Processing's Outstanding Debt.

Aperia objects that although it claims eVance, Inc. paid the Outstanding Debt, eVance, Inc. itself argues that it never agreed to pay the Outstanding Debt. This objection shows that Aperia wants to have its cake and eat it too. Under Federal Rule of Civil Procedure 12(b)(6), the Court "accept[s] as true the factual allegations [the plaintiff makes] in the complaint."[33] Although Aperia in its complaint points to correspondence from defendants' counsel stating eVance, Inc. never agreed to pay the Outstanding Debt, Aperia does not allege the content of that statement is true. Instead, Aperia unambiguously alleges that eVance, Inc. agreed to pay and paid off the Outstanding Debt. Aperia cannot, and has not, both alleged that eVance, Inc. has paid and has not paid the Outstanding Debt. The Court must "accept as true" only those factual allegations Aperia alleges in its complaint are true and not what the opposing party alleges is true.[34] Therefore, the Court accepts as true Aperia's allegations that eVance, Inc. paid off the Outstanding Debt, which means that eVance, Inc. fully performed on its promise to pay the Outstanding Debt. Thus, Aperia has failed to plausibly state a claim that eVance, Inc. has committed fraud by

---

[31] Aperia's Response to Defendants' Motion to Dismiss at 16–17 (emphasis added) [Doc. No. 39].

[32] *Shandong Yinguang Chem. Indus. Joint Stock Co.*, 607 F.3d at 1034 (quoting *IKON Office Sols., Inc.*, 125 S.W.3d at 124).

[33] *Biro*, 807 F.3d at 544.

[34] *Id.*

D.

Defendants argue in their motion to dismiss that Aperia does not sufficiently allege that it sustained recoverable damages under its promissory estoppel, unjust enrichment, and quantum meruit claims against eVance, Inc. Defendants elaborate in their briefing that Aperia has failed to allege out-of-pocket damages for its promissory estoppel and unjust enrichment claims and reasonable value for its quantum meruit claim. Instead, Aperia only alleges the amount eVance, Inc. was billed, which defendants argue includes unrecoverable damages for Aperia's equitable claims, namely profits. Aperia objects that it has sufficiently alleged that it sustained recoverable damages at this stage of the proceedings.

The Court agrees with Aperia. Defendants' argument misses the mark. Under a motion to dismiss analysis, the Court determines whether a plaintiff has plausibly stated a claim.[35] Here, defendants do not argue that Aperia has failed to sufficiently plead any of the elements to its equitable claims. Rather, defendants focus on what kind of damages Aperia can recover on those claims. Such an analysis is not appropriate at the motion to dismiss stage. The requirement closest to what defendants are referring to is a showing of a redressable injury to establish standing, which requires that the plaintiff will likely "obtain[ ] relief from the injury as a result of a favorable ruling."[36] Aperia sufficiently alleges redressable injury in its complaint for all its equitable claims. For its promissory estoppel claim, Aperia's alleges in its complaint that it "has been damaged" by eVance, Inc. breaking its promise to pay for

---

[35] *Bell Atl. Corp.*, 550 U.S. at 570.

[36] *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 520 (5th Cir. 2014) (quotation marks omitted) (alteration in original).

15

the services were not justified or explained, Aperia alleges eVance, Inc. would be "unjustly enriched" if it does not pay for "the reasonable value of the services" Aperia provided.[38] Aperia further seeks relief in its complaint for $132,661.42 in actual damages. The Court concludes these allegations are sufficient at this stage of the proceedings to show that Aperia will likely "obtain [ ] relief from the injury as a result of a favorable ruling."[39]

IV.

Defendants argue in their motion to dismiss that Aperia has failed to plausibly state any of its claims against OLB because Aperia has not plausibly alleged that OLB is subject to the General Services Agreement and that Smith was acting as OLB's agent in his dealings with Aperia regarding the Outstanding Debt and services provided from April 2018. As all Aperia's claims rest on these two allegations, Aperia's claims against OLB fail. Aperia objects that OLB is subject to the General Services Agreement and that Smith was acting on behalf of OLB in its dealings with Aperia. The Court agrees with defendants.

Aperia has not sufficiently pled that OLB is subject to the General Services Agreement, which is the basis of Aperia's breach of contract claim. For OLB to be subject to the General Services Agreement, it must be a party to the foreclosure sales memorandum, which transferred eVance Processing's assets. The Court has concluded in Section III of this opinion that Aperia has sufficiently alleged the General Services Agreement was one of the transferred assets. The sales memorandum does not list OLB as a purchaser or any other party, which means OLB

---

[37] Aperia's Third Amended Complaint ¶39 [Doc. No. 38].

[38] Aperia's Third Amended Complaint ¶45 [Doc. No. 38].

[39] *Duarte ex rel. Duarte*, 759 F.3d at 520 (quotation marks omitted) (alteration in original).

16

is subject to render services under the facts alleged. Aperia objects that correspondence from defendants' counsel states OLB purchased the assets. Regardless of such correspondence, the buck stops with the four corners of the sale memorandum and OLB is not a party to it.[40] As such, taking Aperia's allegations as true, Aperia has failed to state a breach of contract claim against OLB.

Aperia has not sufficiently pled that Smith was acting as OLB's agent in his dealings with Aperia regarding the Outstanding Debt and services provided from April 2018, which forms the basis of Aperia's remaining claims.[41] Although a Court generally accepts facts pled by a plaintiff as true, factual allegations do not suffice if they are "'naked assertion[s]' devoid of 'further factual enhancement.'"[42] Aperia asserts that Smith was an agent of OLB and alleges that correspondence from defendants' counsel after the pay disputes between the parties arose show that Smith was OLB's agent. The correspondence sent to Aperia—an e-mail and a letter—states, respectively, that "after the purchase of [eVance Processing's] assets by the OLB Group, an offer was made to Patrick [Smith] to continue with the OLB Group" and that "OLB Group tried to negotiate a new agreement with Aperia for Aperia services with the new company, eVance, Inc., but the parties could not come to terms."[43] Aperia reasons that this correspondence shows that OLB employed Smith and that OLB was operating through Smith in its dealings with Aperia for the Outstanding Debt and the services it provided from April 2018.

---

[40] *Lester's Activewear, Inc.*, 2010 WL 1293733 at *2.

[41] These claims are fraud by representation, fraudulent inducement, suit on sworn account, promissory estoppel, quantum meruit, and unjust enrichment.

[42] *Biro*, 807 F.3d at 544 (citing *DiFolco*, 622 F.3d at 110–11); *Ashcroft*, 556 U.S. at 678 (alteration in original).

[43] Aperia's Third Amended Complaint, Exhibits V & T [Doc. No. 38].

17

enhancement" to its "naked assertion" that Smith was an agent of OLB.[44] Although in isolation Aperia's interpretation of the correspondence may appear reasonable, examining the correspondence in light of Aperia's own allegations and documents attached to its complaint, shows it is not. For the e-mail correspondence, later in the same e-mail chain Aperia asks when Smith began to work with "eVance and/or the OLB Group."[45] When faced with this more precise question, OLB responds narrowly that Smith "began with eVance, Inc. in April 2018," which indicates that OLB's counsel is stating eVance, Inc. is Smith's sole employer.[46] This interpretation also makes sense of the rest of the cited e-mail correspondence, which states that OLB purchased eVance Inc.'s assets. The sales memorandum, as noted above, shows that eVance, Inc., a subsidiary of OLB, was a party to that agreement and not OLB. If Aperia's interpretation of "OLB Group means only OLB" is correct, then OLB's statement that it purchased eVance's Inc.'s assets is incompatible with the sales memorandum and so is not trustworthy for any sort of factual enhancement. If instead "OLB Group" is a loose term that could mean OLB or one of its subsidiaries, then OLB purchasing eVance Processing's assets means that one or more of OLB's subsidiaries purchased these assets, which is compatible with the terms of the sales memorandum. For these reasons, the e-mail correspondence does not provide factual enhancement to Aperia's allegation that Smith was an agent of OLB in its dealings with Aperia.

Regarding the letter correspondence, any factual enhancement it could provide

---

[44] *Ashcroft*, 556 U.S. at 678 (alteration in original).

[45] Aperia's Third Amended Complaint, Exhibit V [Doc. No. 38].

[46] Aperia's Third Amended Complaint, Exhibit V [Doc. No. 38].

is Aperia alleges in its complaint that Smith asked Aperia if it was interested in providing services to eVance, Inc. Aperia does not allege Smith ever asked if Aperia could provide services to OLB. Moreover, Exhibits J, K, L, M, and N to the complaint show that all payments made to Aperia came from an eVance, Inc. account and not from OLB. It is also worth noting that the letter never mentions Smith or what his relationship to OLB is. Coupled with these issues is the fact that Aperia at this point is relying on a single sentence in a letter drafted well after the disputes in this case arose for factual enhancement of its allegation that Smith is an agent of OLB. Aperia does not allege Smith ever represented he was an agent of OLB. Aperia does not allege it ever understood Smith to be an agent of OLB in its dealings with Smith. Aperia's exhibits only show that eVance, Inc. and not OLB sent payments to Aperia. Aperia also acknowledges that eVance, Inc. is a separate entity from OLB. Looking at these issues collectively, the Court concludes that a single sentence is insufficient to constitute factual enhancement to Aperia's "naked assertion" that Smith was an agent of OLB in its dealings with Aperia and thus drag OLB into federal court. As such, Aperia fails to state any of its remaining claims against OLB.

For these reasons, the Court concludes Aperia has failed to plausibly allege any claim against OLB.

V.

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** defendants' motion to dismiss. The Court **GRANTS** defendants' motion with regards to Aperia's fraud and fraudulent representation claims against eVance, Inc. and **DIMISSES** these claims **WITH PREJUDICE**. The Court

19

GRANTS defendants' motion with regards to Aperia's claim against eVance Capital and DISMISSES these claims **WITH PREJUDICE**. The Court **DENIES** defendants' motion with regards to Aperia's claims of breach of contract, suit on sworn account, promissory estoppel, unjust enrichment, and quantum meruit against eVance, Inc.

**IT IS SO ORDERED** this 30th day of July, 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE