UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APERIA SOLUTIONS, INC., | § | |
| | § | |
| *Plaintiff and Counter-Defendant,* | § | |
| | § | |
| | § | Civil Action No. 3:18-CV-03276-X |
| v. | § | |
| | § | |
| EVANCE, INC., | § | |
| | § | |
| *Defendant and Counter-Plaintiff.* | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Aperia Solutions, Inc. sued Evance, Inc. for breach of contract, promissory estoppel, and quantum meruit stemming from alleged non-payment for services. Evance, Inc. responded with a counterclaim, alleging that it actually overpaid for the services in question. The Court held a jury trial, and the jury returned a verdict in favor of Aperia. The Court entered a judgment in favor of Aperia based on the verdict. Aperia filed a Motion for Attorney's Fees [Doc. No. 148], Evance, Inc. filed a Second Motion for New Trial [Doc. No. 151], and Aperia filed a Motion to Strike Declaration of Andrew Ryan [Doc. No. 160]. For the forgoing reasons, the Court **DENIES** the motion for new trial, **DENIES** the motion to strike, and **GRANTS** the motion for attorney's fees.

1

# I. Legal Standards

Under Texas law, litigants may recover attorney's fees only if a statute or contract allows it.[1] Texas Civil Practice and Remedies Code § 38.001(8) establishes that a party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."[2] "To recover attorney's fees under section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages."[3] An award of reasonable fees is mandatory under section 38.001 if there is proof that the fees are reasonable.[4]

When lawsuits advance both recoverable and unrecoverable claims, "a claimant must segregate recoverable from unrecoverable fees."[5] But "when discrete legal services advance both a recoverable and unrecoverable claim" the services are "so intertwined that they need not be segregated."[6] To determine the reasonableness of attorney's fees, courts look to eight factors identified by the Texas Supreme Court in *Arthur Andersen & Co. v. Perry Equip. Corp.*:[7]

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

---

[1] *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011).

[2] TEX. CIV. PRAC. & REM. CODE § 38.001(8).

[3] *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1994).

[4] *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 n.2 (5th Cir. 2000).

[5] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).

[6] *Id.*

[7] 945 S.W.2d 812 (Tex. 1997).

(2) the likelihood . . . that the acceptance of particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[8]

To determine the amount of fees and costs awarded, the Court must determine the lodestar. The lodestar is the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.[9] "In calculating the lodestar, the court should exclude all time that is excessive, duplicative, or inadequately documented."[10] The Supreme Court of Texas has recognized that "the base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations."[11]

## II. Analysis

### A. Motion for New Trial

After carefully reviewing the briefings, as well as the arguments and authorities therein, the Court **DENIES** the motion for new trial.

---

[8] *Id.* at 818.

[9] *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016).

[10] *Id.*

[11] *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W. 469, 500 (Tex. 2019).

## B. Motion to Strike

After carefully reviewing the briefings, as well as the arguments and authorities therein, the Court **DENIES** the motion to strike the affidavit of Mr. Ryan.

## C. Motion for Attorney's Fees

Here, Texas law provides an attorney fee award to the prevailing parties in breach of contract lawsuits. There is no dispute that Aperia was the prevailing party and is entitled to attorney's fees by statute. Evance, Inc., however, disputes the amount of fees and costs that Aperia can collect.

### *1. Reasonable and Necessary*

*i. Number of individuals assigned to the case and their respective workloads.*

Evance, Inc. takes issue with the reasonableness of Underwood Perkins's rates and hours billed in this case. Evance, Inc. first argues that Underwood Perkins assigned too many individuals to work on the case. Six individuals billed time for Underwood Perkins: two senior litigation partners, one senior litigation associate, two junior associates, and one paralegal. Evance, Inc. argues that the senior associate, Mr. Pierce, and paralegal, Ms. Andrews, would have been enough to manage a case of this size and complexity.

But Evance, Inc.'s evidence for this conclusion is based solely on its owns counsel's decision to employ a "one riot, one ranger" cost-saving approach to the case. The Court greatly admires Mr. Ryan's single-handed, excellent representation in this case. But Texas law does not mandate this approach for all clients. The Court is unaware of any industry consensus that assigning more than one attorney to any

particular type of case is de facto unreasonable.[12]  This case involved multiple and alternative claims as well as a counterclaim.  Employing multiple attorneys in this case was not unreasonable.

Further, the number of individuals assigned to the case was not unreasonable. Evance, Inc. argues that the case did not warrant two partners assigned to it. Underwood Perkins's standard practice is to assign two partners to each case that is likely to go to trial.[13]  This way, if the primary partner encounters a scheduling conflict, the secondary partner can easily step into his or her place and prevent delays in the case.  The system is designed to ensure the work is not duplicative, so effectively only one partner's worth of work is billed.  Evance, Inc. points to no industry consensus that this approach is unreasonable.

A similar situation occurred with the associates Underwood Perkins assigned to this case.  Mr. Pierce handled the lion's share of the workload.  Another associate, Mr. Campbell, contributed 3.8 hours to the case.[14]  And a third associate, Ms. Sherman, contributed 90 hours of trial prep work and support during the trial.[15]  It appears she completed this work while Mr. Pierce handled other aspects of the case, and she did so at a rate lower than his.  Again, while Evance, Inc.'s counsel opines that this distribution of labor could have been condensed to fewer attorneys, it

---

[12] Further, although talented, Mr. Pierce possessed little experience litigating in federal court and never tried a case to a jury prior to this case.  The Court sees no objective reason to conclude that Mr. Pierce was categorically capable of managing every aspect of this case himself.

[13] Doc. No. 159 at 3.

[14] *Id.* at 4.

[15] *Id.* at 5.

identifies no industry standards indicating that Underwood Perkins's staffing decision was unreasonable or that the tasks performed were duplicative.

Finally, Evance, Inc. identifies several discrete tasks performed by attorneys that it argues were clerical and should have been performed by Underwood Perkins's paralegal, Ms. Andrews.[16] But Evance, Inc. does not explain any objective criteria for determining that these tasks were unnecessary or unreasonable to be performed by an attorney.

*ii. Number of hours billed.*

Evance, Inc. argues that Underwood Perkins billed an unreasonable number of hours on this case. Underwood Perkins billed 1,273 hours in total. Evance, Inc. compares this to the 289 hours its lawyer billed and concludes the disparity demonstrates Underwood Perkins billed unreasonably. But this comparison is undermined by the fact that, on multiple occasions, Evance, Inc. opted not to complete standard litigation tasks, such as submitting competent summary judgment evidence[17] and deposing Aperia's trial witnesses.[18] And ultimately it was Underwood Perkins that secured a favorable verdict for its client. Just because Evance, Inc's attorney completed his work in fewer hours does not make him the standard for what is a reasonable amount of time. And Evance, Inc. points to no objective criteria in the industry that indicates 1,273 hours is an unreasonable amount of time to commit to a jury trial that took almost three years to litigate.

---

[16] Doc. No. 155 at 10–12.

[17] Doc. No. 71 at 3–4.

[18] Doc. No. 120 at 7.

*iii. Rate of legal services.*

Evance, Inc. also argues the rates charged by Underwood Perkins were unreasonable at every level.  Evance, Inc. points to a 2015 State Bar of Texas Hourly fact sheet which identifies statewide average hourly rates for attorneys of different experience levels.[19]  But this report highlights only average rates based on responses to the State Bar's survey.[20]  "It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's services."[21]  Attorney hourly rates are on the rise in major Texas legal markets, particularly in business and commercial practices.[22]  The rates charged by Underwood Perkins here are within or below the rates charged by many other firms

---

[19] Doc. No. 155 at 14.  The fact sheet states that reasonable hourly rates are: $350 for attorneys with over 25 years' experience, $300 for those with twenty years, $250 for eight years, and $217 for two years or less.  *Id.*

[20] The report is based on data received in response to attorney surveys.  The survey used to create this report had a response rate of only 12.5 percent, about 11,793 lawyers.  *2015 Hourly Rate Fact Sheet*, STATE BAR OF TEXAS DEPT. OF RESEARCH AND ANALYSIS, 2 (2015).  And the report states that it only managed to collect data on hourly rates from 4,260 of the responding attorneys, a small data pool compared to the entire population of Texas lawyers.  *Id.*  The report does not identity what percentage of the responses were from Dallas attorneys, or what practice-area cross section those responders represent.

[21] *SortiumUSA, LLC v. Hunger*, 2015 WL 179025, at *5 (N.D. Tex. Jan. 14, 2015) (Lynn, J.) (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976); *see also Merge Office Interiors, Inc. v. Alfa Adhesives, Inc.*, 2020 WL 2115645, at *2 (N.D. Tex. May 3, 2020) (Lynn, C.J.) (determining reasonableness of hourly rate "[b]ased on the Court's knowledge of rates charged for legal services by attorneys with the level of skill, competence, and ability of Plaintiff's counsel and paralegal in the Dallas legal community, and its experience in setting attorney's fees in other cases").

[22] "Scores of Texas lawyers now charge $1,000 or more per hour for their legal services . . . Another 200 business attorneys in the state are likely to cross the $1,000-an-hour threshold over the next three years.  Businesses across Texas received letters during the past few weeks from the law firms that represent them delivering news of the higher rates."  Mark Curriden, *Texas legal rates soar as national firms rush in*, HOUSTON CHRONICLE, March 24, 2017, available at https://www.houstonchronicle.com/business/article/Texas-legal-rates-soar-as-national-firms-rush-in-11025525.php.

in this city.[23]   Based on review of the record and the Court's knowledge of rates in this locality and practice area, the Court determines that the rates charged by Underwood Perkins were reasonable.

In sum, the Court finds that Underwood Perkins's hours and rates, which ultimately produced a favorable outcome for their client, were necessary and reasonable.

## 2. Fee Segregation

Although Aperia prevailed on its breach of contract claim, it also litigated multiple quasi-contract claims as well as a fraud claim earlier in the case.  Evance, Inc. argues these other claims do not provide a basis for recovering attorney's fees and therefore the Court must reduce Underwood Perkins's requested fees.  In cases involving recoverable and unrecoverable claims, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees."[24]   "Intertwined facts do not make [unrecoverable] fees recoverable; it is only when discrete legal services advance both

---

[23] See *In re Taco Bueno Restaurants, Inc., et al*, No. 18-33678, Doc. No. 308 (Bankr. N.D. Tex. Feb. 14, 2019) (Vinson & Elkins LLP billing rates for Partners ($945–$1,280), Counsel ($830–$915) and Associates ($450–$945) (the Court takes judicial notice that one billable hour at this top associate rate would buy $866 party tacos before tax); *In re Borden Dairy Company, et al., Debtors*, No. 20-10010 (CSS), Doc. No. 264 (Bankr. D. Del. Feb. 14, 2020) (Sidley Austin LLP billing rates for Partners ($1,000–$1,800), Senior Counsel and Counsel ($775–$1,750), Associates ($570 - $960) and Paraprofessionals ($250–$470)); *In re True Religion Apparel Inc., et al*, No. 20-10941 (CSS), Doc. No. 216 (Bankr. D. Del. May 11, 2020) (Akin Gump Strauss Hauer & Feld LLP billing rates for Partners ($995–$1,995), Senior Counsel & Counsel ($735–$1,510), Associates ($535 - $960*)); In re Gymboree Group, Inc., et al.*, No. 1930258 (KLP), Doc. No. 163 (Bankr. E.D. Va. Jan. 30, 2019) (Milbank LLP U.S. "standard" range for Partners ($1,155–$1,540) and Non-Partner Attorneys ($450 –$1,315)).

[24] *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313.

a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."[25]

Evance, Inc. argues that Underwood Perkins failed to segregate its fees and therefore the Court must reduce the award. Aperia's fraud claims were dismissed by the Court early in litigation, at the motion to dismiss phase. And Underwood Perkins removed the hours used to work on those claims before submitting its total fees to the Court.[26] This removal sufficiently segregated the claim and requires no further reduction from the Court.

Aperia's quasi-contract claims, however, were litigated fully to trial. These likely required a significant dedication of time and Underwood Perkins did not segregate time spent between the breach of contract and quasi-contract claims. Although Aperia's quasi-contract claims, promissory estoppel and quantum meruit, do not involve an "oral or written contract," they do involve Aperia's "rendered services" to Evance, Inc.[27] Therefore Aperia's quasi-contract claims are recoverable under section 38.001(1).[28] And the Court need not discount the fee for failure to segregate time spent on those issues.

---

[25] *Id.* at 313–14.

[26] Doc. No. 148, Attachment 1 at 12.

[27] TEX. CIV. PRAC. & REM. CODE § 38.001(1), (8).

[28] *See Solano v. Syndicated Office Sys.*, 225 S.W.3d 64, 68 (Tex. App.—El Paso 2005, no pet.). *Cf. Base-Seal, Inc. v. Jefferson Cty*, 901 S.W.2d 783, 785 (Tex. App.—Beaumont 1995, pet. denied) ("Section 38.001 allows for recovery of attorney's fees in a quantum meruit action where the claim is for materials furnished. Since the instant case is based upon a quantum meruit claim, it falls within the subject matter confines of § 38.001.").

### 3. Lodestar

For the same reasons explained above, the Court finds that Underwood Perkins's billed hours were not unreasonable. Nevertheless, the Court will conduct an *Arthur Andersen* analysis.

> *(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly.*

This case ultimately proceeded to a jury trial. Jury trials, even relatively short ones, require significant time to compile documents, organize witnesses, and prepare for *voir dire*. And, here, Underwood Perkins had to prepare its trial strategy twice, initially for a bench trial and again for the jury trial that ultimately occurred. Although the legal issues of this case were not particularly complex, effective advocacy in a jury trial is a valuable and unique skill.

> *(2) The likelihood . . . that the acceptance of particular employment will preclude other employment by the lawyer.*

This case likely did not preclude significant employment by the lawyers involved.

> *(3) The fee customarily charged in the locality for similar legal services; the amount involved, and the results obtained.*

As the Court already explained, Underwood Perkins billed reasonable rates for this locality. The amount ultimately at issue was less than $75,000. And the jury ultimately awarded only $39,369. Although fee awards that are disproportionate to the amount at issue should make a court pause, Texas courts routinely approve fee

awards that exceed the underlying amount in dispute.[29]   The Court finds that although the fees requested far exceed the disputed amount, they are not unreasonable.

>   *(4) The time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client.*

The case, or the client, did not impose significant time limitations and the Court is unaware of a special or longstanding relationship between Underwood Perkins and Aperia.

>   *(5) The experience, reputation, and ability of the lawyer or lawyers performing the services.*

The lawyers involved were qualified and experienced.

>   *(6) Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.*

The fee was not contingent.

After evaluating the *Arthur Andersen* factors, the Court finds that the lodestar is correct and does not require a downward variance.

### D. Costs

Aperia requests the Court include its costs of $6,383.58 into the award. Although Texas law allows Aperia to recover its costs here, Evance, Inc. argues that the contract at issue in this case prohibits costs recovery.  Under the terms of contract, however, the bar to recovering costs would only apply if the case was resolved by

---

[29] *See, e.g.*, *Herring v. Heron Lakes Estates Owners Ass'n, Inc.*, 2011 WL 2739517, at *2, *5 (Tex. App.—Houston [14th Dist.] Jan. 4, 2011, no pet.) (upholding fees 102 times the underlying award).

arbitration.[30]  The parties did not submit this case to arbitration, so the costs bar does not apply.

### E. Post-trial motion practice and appeal

Aperia ask that the Court also grant fees for services Underwood Perkins rendered after the trial and will provide during the impending appeal.  Evance, Inc. filed two motions for a new trial, which required response and argument from Aperia. This resulted in additional fees of $18,692.[31]  The Court determines these additional fees are reasonable and necessary.

Further, Evance, Inc. already filed a notice of appeal in this case.[32]  Due to the impending appellate process, Aperia asks the Court to grant appellate attorney's fees conditioned on (1) Aperia successfully defending the judgment and (2) what tasks the appeal actually demands.[33]  Evance, Inc. does not dispute that Texas law entitles Aperia to these fees.  Evance, Inc. only disputes the amount of fees, again arguing that the work can be handled exclusively by a single associate.  For the same reasons as explained previously, the Court rejects this argument.  The Court determines the requested conditional appellate fees are reasonable and necessary.

## IV. Conclusion

For the reasons explained above, the Court **DENIES** the motion for new trial, **DENIES** the motion to strike, and **GRANTS** the motion for attorney's fees and costs.

---

[30] Plaintiff's Exhibit 1 at 29–30.

[31] Doc. No. 159, Attachment 1 at 4.

[32] Doc. No. 152.

[33] Aperia request $42,500 for appeal, $21,250 for responding to a petition for review, and $21,500 if the petition for review is granted but relief is denied.  Doc. No. 148 at 14.

The Court awards Aperia Solutions, Inc. (1) reasonable attorney's fees in the amount of $284,274.80; (2) costs and expenses in the amount of $6,383.58; and (3) conditional appellate fees in the amount of $42,500.00 for appeal, $21,250.00 for responding to a writ of certiorari, and $21,500.00 if the writ is granted but relief is denied.

**IT IS SO ORDERED** this 19th day of August, 2021.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE