UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APERIA SOLUTIONS, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-03276-X |
| | § | |
| EVANCE, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is eVance, Inc.'s motion for a choice-of-law determination. [Doc. No. 187]. At their impending retrial, eVance, Inc. and Aperia Solutions, Inc. ("Aperia") will dispute the existence and contents of an alleged oral contract between them, and eVance, Inc. asks the Court to decide that Georgia law will govern the contract if it was indeed formed. After thorough consideration, and for the reasons below, the Court **GRANTS** the motion and determines that, should the jury find that the parties formed an oral contract, that agreement shall be governed by the law of the state of Georgia.

### I. Background

Plaintiff Aperia Solutions, Inc. contracted to provide Internet-based reporting and management systems for eVance Processing, Inc. ("eVance Processing") in a General Services Agreement (the "GSA"). About two years later, eVance Processing was foreclosed on, and the OLB Group purchased its assets at public auction. At the time of sale, eVance Processing owed Aperia $56,847.84 ("the Outstanding Debt").

1

The OLB Group created a new entity—Defendant eVance, Inc.—to purchase eVance Processing's assets at the sale, and it hired eVance Processing's former general manager Patrick Smith to serve as eVance, Inc.'s new general manager.

Over the next several months, Aperia, which is based in Dallas, Texas, provided services to eVance, Inc., which is based in Alpharetta, Georgia. eVance, Inc. sent payments to Aperia. The parties disagree about whether these payments were offered to honor the GSA between Aperia and eVance Processing. eVance, Inc. contends it was making "good faith" payments to further the new business relationship, but Aperia counters with evidence that the payments were meant to go toward the Outstanding Debt. The parties also disagree about whether, or to what extent, Aperia and eVance, Inc. were concurrently negotiating new terms for the companies' working relationship during the months following the purchase. This disagreement focuses primarily on communication between Smith and Aperia's Vice President of Sales, Mark Hayward, who visited eVance, Inc.'s Georgia offices soon after the sale.

After eVance, Inc. discontinued Aperia's services, Aperia sued eVance, Inc. for breach of contract, promissory estoppel, and quantum meruit stemming from eVance, Inc.'s alleged failure to pay for services.

The case went before a jury. At the close of Aperia's case-in-chief, eVance, Inc. moved for a directed verdict, arguing that Aperia failed to introduce any evidence showing that eVance, Inc. did not pay the Outstanding Debt and had in fact argued that it applied eVance, Inc.'s payments to satisfy the Outstanding Debt. The Court

granted the directed verdict, which spurred Aperia to adjust its strategy. Aperia informed the Court that it would pursue a ratification theory, and accordingly, the jury was asked whether eVance, Inc. purchased the GSA, and if not, whether it ratified the GSA.

The jury returned a verdict for Aperia. It concluded that eVance, Inc. had not purchased the GSA but had indeed ratified it. Because it further held that eVance, Inc. breached the ratified GSA, it awarded damages to Aperia and did not consider Aperia's alternative claims for recovery. The Court entered judgment for Aperia based on the verdict and denied eVance, Inc.'s request for a new trial. eVance, Inc. appealed that denial.

The Fifth Circuit reversed and remanded. It agreed with eVance, Inc. that ratification was "an erroneous legal theory" because "[a]s a matter of law, eVance, Inc.—which was not a party to the GSA (nor even existed as an entity at the time the GSA was created)—could not ratify it."[1] Wondering whether "[t]he evidence might show that Smith entered into an oral agreement to bind" eVance, Inc., the Fifth Circuit noted that "[t]he jury never answered whether an agreement was formed, yet it must do so in the first instance."[2]

---

[1] *Aperia Sols., Inc. v. eVance, Inc.*, No. 21-10683, 2022 WL 2116001, at *4 (5th Cir. June 13, 2022).

[2] *Id.*

With a retrial fast approaching, eVance, Inc. now asks the Court to determine what law—Georgia or Texas—would govern the alleged oral contract.[3]

## II. Legal Standards

This case arises under the Court's diversity jurisdiction, so the Court must apply Texas's choice-of-law rules.[4] Texas adheres to the Restatement (Second) of Conflict of Laws (the "Restatement"),[5] which, in Section 188, "govern[s] [the] choice-of-law analysis when the parties do not choose" what state's law will apply when forming a contract.[6] Section 188 instructs that, in such cases, the applicable law for "an issue in contract" is supplied by "the state which, with respect to that issue, has the most significant relationship to the transaction and the parties."[7] Then, Section 188 lists certain "contacts to be taken into account" to help "determine the law applicable to an issue[,] includ[ing]: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."[8] It concludes with the instruction that "[t]hese contacts are to be evaluated according to their relative importance with

---

[3] Courts are only supposed to undertake a choice of law analysis if a conflict emerges. Here, the conflict is that Texas law would allow recovery of attorney's fees in the case of a breached oral contract while Georgia law would not.

[4] *See, e.g.*, *Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184, 188 (5th Cir. 2021) (applying "Texas's choice-of-law rules . . . as a federal court sitting in diversity").

[5] *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678–79 (Tex. 1990).

[6] *KLX Energy*, 20 F.4th at 187 n.3 (cleaned up).

[7] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971).

[8] *Id.* § 188(2).

respect to the particular issue."[9] In other words, "[t]he contacts are weighed 'not by their number, but by their quality,'" and high-quality contacts will "rack up points for" applying a given state's laws.[10]

### III.  Analysis

Aperia maintains two separate claims against eVance, Inc.: (1) that eVance, Inc. purchased the GSA from eVance Processing, which it then breached by failing to pay Aperia for its services, and (2) that eVance, Inc. entered into an oral contract with Aperia to pay both the Outstanding Debt and the money owed for services Aperia would subsequently render to eVance, Inc.  Because the GSA contains a Texas choice-

---

[9] *Id.* Section 188 instructs courts to identify the state with the most significant relationship "under the principles stated in § 6," and to take the various contacts into account "in applying the principles of § 6." *Id.* § 188(1), (2).  Section 6 of the Restatement lists seven far broader factors for consideration in any choice-of-law analysis, regardless of the area of law in question. *Id.* § 6(2) (listing relevant factors as including "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied").  "Texas law is unclear on whether [courts] must separately consider the [S]ection 6 factors or whether [courts] can instead assume that the [S]ection 188 contacts are sufficient applications of the general Section 6 considerations in the contract context." *KLX Energy*, 20 F.4th at 191 (cleaned up); *see DeSantis*, 793 S.W.2d at 678–79 (acknowledging Section 6 factors and performing Section 188 analysis without expressly applying them).  Section 188 applies specifically to contracts, and given the nature of this contract dispute, the generalized considerations of Section 6 would receive little, if any, weight in the Court's analysis.  Likely the most relevant Section 6 factor, "the protection of justified expectations," is subsumed in Section 188's better-suited analysis of relevant "contacts": "Parties generally expect that the law of the place of negotiation, contracting, and performance . . . will govern." *KLX Energy*, 20 F.4th at 192.  With no clear instructions to consider the Section 6 factors under these circumstances, and because the Section 6 factors do not sway its ultimate conclusion, the Court will focus its analysis on Section 188's contract-specific factors.

[10] *KLX Energy*, 20 F.4th at 190 (quoting *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996)).

of-law provision,[11] eVance, Inc. only seeks a determination concerning what law applies to the oral contract alleged in Aperia's second claim.

Before turning to what law applies, the Court must first consider two threshold arguments from Aperia: (1) that eVance, Inc. waived its right to file this motion, and (2) that the alleged oral contract "incorporated" the GSA and its Texas choice-of-law provision, rendering eVance, Inc.'s question moot.

### a. Waiver

The Court rejects Aperia's argument that eVance, Inc. waived its right to ask which state's law governs the alleged oral contract. The jury was not asked whether the parties formed an oral contract. The jury was asked whether eVance, Inc. purchased or ratified the GSA—including the GSA's Texas choice-of-law provision. So eVance, Inc. had no reason to raise its choice-of-law concerns because the jury only contemplated the GSA's applicability, which precluded any choice-of-law questions. But given the Fifth Circuit's prompting that the retrial should address oral contract formation, the timing of eVance, Inc.'s motion for a choice-of-law determination is entirely appropriate.

Aperia correctly admonishes that eVance, Inc. "ha[d] an obligation to call the applicability of another state's law to the [C]ourt's attention in time [for it] to be properly considered."[12] But now—weeks ahead of the Pretrial Order, Pretrial

---

[11] Doc. No. 171-1 at 20.

[12] *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987) (noting that a party "need not plead the applicability of [another state's] law to preserve a choice-of-law question," and adding that "federal courts are required to take judicial notice of the content of the laws of every state in the Union").

Conference, and start of the retrial—is a suitable time to bring a choice-of-law issue to the Court's attention. The Court has had sufficient time to "properly consider[]" the applicability of Georgia law, so it will not deny eVance, Inc. the right to raise this important question.[13]

### b. Incorporation

Aperia urges the Court to reject eVance, Inc.'s choice-of-law motion because the alleged oral contract "[i]ncorporated" the entire GSA, including its Texas choice-of-law provision.[14] Invoking Smith's assurance to Hayward that eVance, Inc.'s post-sale relationship with Aperia would be "business as usual," Aperia contends that this and other behavior proves Smith and Hayward's intent to "enter[] into a valid, oral contract for eVance, Inc. to assume the terms of the GSA."[15] But an agreement to provide the same services for the same fees, if it existed, does not equal an agreement to adopt the entire GSA word-for-word.

And even if it did, Aperia's theory of "incorporating" or "assuming" the GSA bears a suspicious resemblance, both legally and linguistically, to the theory the Fifth Circuit expressly repudiated: ratification. The Fifth Circuit quoted the entire definition of "Ratification" provided in the jury instructions, which includes a phrase that could just as easily describe Aperia's theory of "incorporation": "Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the

---

[13] *Id.*
[14] Doc. No. 188 at 8.
[15] Doc. No. 188 at 8–9.

transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct."[16]  This is precisely what Aperia alleges when it claims Smith and Hayward "incorporated" the GSA in their oral agreement to the benefit of eVance, Inc. and Aperia.

The Fifth Circuit unequivocally barred the Court from entertaining this ratification-in-sheep's-clothing argument.  The Court therefore cannot prevent eVance, Inc. from requesting a choice-of-law determination on the grounds that the alleged oral contract incorporated the GSA.

### c.  Restatement Section 188

Because eVance, Inc. timely raised its choice-of-law question, and given that the alleged oral contract did not incorporate the GSA and its choice-of-law provision, the Court turns now to the factors provided by Section 188 of the Restatement to determine whether Texas or Georgia law bears "the most significant relationship to the transaction and the parties."[17]

### 1.     The Place of Contracting

On April 12, 2018, eVance, Inc.'s general manager, Patrick Smith, met with Aperia's Vice President of Sales, Mark Hayward, at eVance, Inc.'s offices in Alpharetta, Georgia.  Hayward testified that Smith told him, "it is business as usual moving forward . . . [a]nd we are, you know, still using your contract.  We are still

---

[16] *Aperia Sols.*, 2022 WL 2116001, at *2.

[17] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971).

using your services; they are mission critical. Please, you know, we are going to work hard to get things current and get the dues paid."[18]

Aperia objects that Smith and Hayward lacked authority to bind their respective companies to an oral contract, so approval was required from their respective bosses located in Texas and New York. Thus, Aperia contends, the true place of contracting cannot be Georgia. But Aperia cites no evidence to show that either Smith or Hayward *actually* contacted their out-of-state boss before entering into the alleged contract, and it cites no evidence to back its claim that Hayward lacked authority to bind Aperia. Granted, eVance, Inc.'s owner testified that Smith required approval before making financial decisions for the company. But this does not prove Smith did not bind eVance, Inc. in Georgia. For example, eVance, Inc.'s owner never testified that Smith asked for, and was refused, authorization to contract with Hayward. Further, the evidence indicates that Smith could have bound eVance, Inc. by exercising apparent authority to do so.

To whatever extent the conversation between Smith and Hayward formed an oral contract, the facts show that the contracting happened where the conversation happened: Alpharetta, Georgia.

### 2. The Place of Negotiation of the Contract

Even if Aperia's argument stands, and the oral contract was impotent until confirmed by executives in Texas and New York, Georgia remains "[t]he place where

---

[18] Doc. No. 167 at 418:12–19.

the parties negotiate[d] and agree[d] on the terms of their contract."[19] Any interstate communication between Smith and Hayward and their superiors would have been needed only *because* the negotiation of terms was taking place in Georgia. And such communication would be irrelevant to this factor because internal conversations between Hayward and Aperia executives, or between Smith and eVance, Inc.'s owner, would constitute mere negotiation *among* each party, not true negotiation *between* separate parties. This "significant contact" weighs heavily in favor of Georgia.[20]

### 3. The Place of Performance

Aperia physically set up its Internet-based systems at eVance, Inc.'s office in Georgia and trained eVance, Inc.'s employees in Georgia, but thereafter, it performed its work in Texas. eVance, Inc. collected data from across the nation to its location in Georgia and sent it to Aperia in Texas, and Aperia processed the data and sent it back to Georgia. So while both companies physically and digitally performed their obligations under the alleged oral contract in Georgia, only one company, Aperia, performed any work in Texas.[21]

---

[19] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. e.

[20] *Id.*

[21] Aperia downplays the significance of its physical work in Georgia, describing it as merely "activating a 'portal'" to transport data from Georgia to its final destination in Texas. Doc. No. 188 at 13. Perhaps appealing to the Court's Texan sensibilities, Aperia likens data traveling through a portal to the foray of defensive lineman Jaxon Player, who left his native Waco to play at the University of Tulsa and, after realizing his "grievous error," returned via the College Football Transfer Portal to Waco to play for Baylor University. *Id.* The Court admits the analogy, but the business relationship here is different. Player's "place of performance" is Waco, where he arrived out of the "portal," not Tulsa, where he entered it. But eVance, Inc. did not send data through the portal so Aperia could process it in Texas. eVance, Inc. sent data through the portal so Aperia could process it in Texas *and send it back to Georgia.* Unlike Player's performance, which can now be entirely completed south of the Red River because Player need never return to the "entrance" of the portal, here, the performance was incomplete unless Aperia sent its processed data back to the portal in Georgia.

This factor slightly favors Georgia. But because "the place of performance can bear little weight" when "performance by a party is to be divided more or less equally among two or more states," this factor will not tip the scale either way.[22]

### 4. The Location of the Subject Matter of the Contract

Like the place of performance, the contract's subject matter is difficult to pin down and does not significantly favor either Georgia or Texas. The alleged oral contract called for digital data to be collected in Georgia, sent to Texas, processed in Texas, and sent back to Georgia for use and resale. Again, this factor does not conclusively weigh toward either state.[23]

### 5. The Domicil, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties.

Aperia is a Texas corporation with its principal place of business in Texas, and eVance, Inc. is incorporated in Delaware with its principal place of business in Georgia.[24] Where each party is equally attached to a state it contends should prevail in a choice-of-law analysis, this factor "is negated."[25] Because that is the case here, this factor is neutral.[26]

---

[22] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. e.

[23] *See id.* ("When the contract deals with a specific physical thing, such as land or a chattel . . . the location of the thing . . . is significant," because "[t]he state where the thing . . . is located will have a natural interest in transactions affecting it.").

[24] Doc. No. 125 at 3.

[25] *KLX Energy*, 20 F.4th at 191.

[26] Although eVance, Inc. is incorporated in Delaware, the Restatement notes that "[a]t least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. e.

## IV. Conclusion

Two of the Section 188 factors strongly favor Georgia. Two slightly favor Georgia. One is neutral. Section 188 provides these factors only to aid in the ultimate determination of "the state which, with respect to th[e] issue, has the most significant relationship to the transaction and the parties."[27] That state is Georgia.

The Court finds that eVance, Inc. did not waive its right to ask for a choice-of-law determination, that any alleged oral contract did not "incorporate" the GSA, and that the Section 188 factors indicate Georgia as the appropriate state to govern this contract dispute. Accordingly, the Court **GRANTS** eVance, Inc.'s motion and determines that, should the jury find that the parties formed an oral contract, that agreement shall be governed by the law of the state of Georgia.

**IT IS SO ORDERED** this 14th day of November, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[27] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971).