UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APERIA SOLUTIONS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-3276-x |
| | § | |
| EVANCE, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Aperia Solutions, Inc.'s ("Aperia") Motion for Interpretation of Unambiguous Contract. [Doc. 206]. Aperia asks the Court to (1) determine whether the contract at issue is unambiguous, and, if so, (2) interpret that contract to determine whether Defendant eVance, Inc. acquired the General Services Agreement ("GSA") when it signed the Memorandum of Sale. The Court **GRANTS** the motion and, for the following reasons, finds that the Memorandum of Sale is unambiguous and that eVance, Inc. purchased the GSA.

The Court has recounted the underlying facts and procedural history of this case in previous orders.[1] The present question tangles with the heart of this dispute. It is a tale of two contracts. The first contract is the GSA, an agreement between Aperia and eVance Processing, Inc. ("eVance Processing") that obligated Aperia to provide services to eVance Processing in exchange for payment. The second contract is the Memorandum of Sale by which eVance, Inc. purchased much of eVance

---

[1] *See, e.g.*, Doc. 193 at 1–4.

1

Processing at public auction. The question is whether the second contract—the Memorandum of Sale—unambiguously stated that eVance, Inc. was acquiring the first contract—the GSA—when it signed the Memorandum of Sale.

The Court begins with the question of ambiguity. As a federal court sitting in diversity, the Court looks to the law of its forum state—Texas—to determine whether the contract is ambiguous.[2] Texas law says that a contract is unambiguous when its "language can be given a certain or definite meaning."[3] "Lack of clarity does not create an ambiguity, and not every difference in the interpretation of a contract amounts to an ambiguity."[4] Instead, "an ambiguity arises when [a contract] is susceptible to more than one reasonable meaning after application of established rules of construction."[5] And unambiguous contract language "should be interpreted by a court as a matter of law."[6]

If the contract is unambiguous, the Court may then turn to the question of interpretation. "It is well-settled law that the interpretation of an unambiguous

---

[2] *In re Haber Oil Co., Inc.*, 12 F.3d 426, 443 (5th Cir. 1994); *BB Energy LP v. Devon Energy Prod. Co. LP*, No. 3:07-CV-0723-O, 2008 WL 2164583, at *5 (N.D. Tex. May 23, 2008) (O'Connor, J.). The contract says that New York law shall govern the interpretation of its text, but it does not say what state's law will determine whether that text is ambiguous. So before the Court can apply New York law and interpret the contract's text, the Court must first apply the law of its forum state, Texas, to determine whether that text is ambiguous.

[3] *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003).

[4] *Id.* (cleaned up).

[5] *Id.*

[6] *Id.*

contract is a question of law for the court to decide."[7]  The Memorandum of Sale itself dictates that New York law governs its interpretation.[8]

In denying Aperia's motion for partial summary judgment, the Court found that there was a genuine dispute of material fact regarding whether eVance, Inc. purchased the GSA.[9]  Aperia now asks the Court to interpret the Memorandum of Sale as unambiguously stating that eVance, Inc. purchased the GSA, which at first glance looks like Aperia seeks a second bite at the summary-judgment apple.  But one key fact procedurally rescues Aperia's request.  Three months after the Court denied summary judgment for Aperia, eVance, Inc. stated that it "discovered" a new document that formed part of the Memorandum of Sale: Schedule 2.2(g).[10]  The Court will permit Aperia to revisit the question of whether the Memorandum of Sale shows that eVance, Inc. bought the GSA because the Court made its previous ruling—that a dispute existed on this point—without the benefit of Schedule 2.2(g).[11]

Aperia argues that Schedule 2.2(g) is crucial because it lists all of the "Excluded Assets" that were *not* sold as part of the Memorandum of Sale.[12]  This is

---

[7] *BB Energy*, 2008 WL 2164583, at *5; *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 939 (5th Cir. 1992) ("A district court's interpretation of an unambiguous contract is a question of law[.]").

[8] Doc. 206 at 77.

[9] Doc. 71 at 6–8.

[10] Doc. 82 at 1–2.

[11] Additionally, this is not a second summary-judgment motion because there are different standards at play.  At the summary-judgment stage, Aperia argued that no genuine dispute of material fact existed concerning whether eVance, Inc. purchased the GSA.  Now, Aperia argues that the language of the Memorandum of Sale unambiguously shows that eVance, Inc. purchased the GSA. The first motion contended with eVance, Inc.'s countervailing evidence; this motion deals only with the four corners of the Memorandum of Sale—as completed by Schedule 2.2(g).

[12] Doc. 206 at 8.

important, Aperia claims, because if the GSA doesn't appear in Schedule 2.2(g), then it *was* sold as part of the Memorandum of Sale.  That's true.  The Memorandum of Sale says that all of the "Acquired Assets"—which includes "all of the right, title[,] and interest of [eVance Processing] in and to all property of [eVance Processing]," but excepts "the Excluded Assets"—"shall be sold, transferred, assigned, conveyed[,] and delivered to [eVance, Inc.], and [eVance, Inc.] shall purchase, acquire[,] and accept[] all of [eVance Processing's] right, title[,] and interest in and to the Acquired Assets[.]"[13]  In English: Everything eVance Processing owned that was up for sale was sold to eVance, Inc. except for the Excluded Assets, which are listed in Schedule 2.2(g).  So, if the GSA was an Acquired Asset, it was sold to eVance, Inc.; if it was an Excluded Asset, it wasn't.

Aperia's prior summary-judgment motion unsuccessfully tried to shoehorn the GSA to fit a few of the examples of Acquired Assets enumerated in the Memorandum of Sale, and the Court expressly rejected several, but not all, of its attempts.  The Court stated that the GSA was not a "contract right" or "supporting obligation," but it did not address one Acquired Asset example listed in the Memorandum of Sale: "payment intangibles."[14]  The Memorandum of Sale says that the New York Uniform Commercial Code's definition of "payment intangible" applies, and that definition is:

---

[13] *Id.* at 66.  The Memorandum of Sale says "Debtors" and "Purchasers" in place of the names, but it earlier defines "Debtors" as including eVance Processing, and states that "[t]he Acquired Assets shall be allocated among [the] Purchasers" such that "eVance[, Inc.] shall acquire all of the Acquired Assets of [eVance] Processing."  *Id.* at 65, 67.

[14] Doc. 71 at 6–7 & n.13; Doc. 206 at 67.  Aperia briefly discussed "payment intangibles" in its motion for partial summary judgment, but the Court did not analyze this example of Acquired Assets when ruling on that motion.

"a general intangible under which the account debtor's principal obligation is a monetary obligation."[15]   Under the GSA, Aperia rendered services, in exchange for which eVance Processing's principal (indeed, only) obligation was monetary.   Thus, the GSA was a textbook example of a "payment intangible," which is a subset of "Acquired Assets."[16]   Importantly, the Court couldn't have known this before seeing Schedule 2.2(g) because the definition of Acquired Assets (including payment intangibles) says that it "exclud[es] in all cases the Excluded Assets."[17]   So, without a list of the Excluded Assets, it was impossible to know whether the GSA, despite being an Acquired Asset, was nevertheless not sold because it was an Excluded Asset.[18]

It is possible now thanks to Schedule 2.2(g).   The revelation of Schedule 2.2(g) rendered the Memorandum of Sale unambiguous because—while complex—it is susceptible to only one reasonable meaning.   The GSA was an Acquired Asset because it was a "payment intangible."   It doesn't appear in Schedule 2.2(g), so it was not an

---

[15] N.Y. U.C.C. § 9-102(a)(61); *see also id.* § 9-102(a)(42) ("'General intangible' means any personal property," and "[t]he term includes payment intangibles[.]").

[16] Doc. 206 at 66–67 (stating that "Acquired Assets" . . . includ[e] . . . "General Intangibles," which "includ[e] . . . payment intangibles").   The Court also notes that the GSA is an Acquired Asset under the Memorandum of Sale's broad, catchall description, which says that "'Acquired Assets' means all of the right, title[,] and interest of [eVance Processing] in and to all property of" eVance Processing "*including* all right, title[,] and interest of [eVance Processing] in and to" a list of enumerated items. *Id.* at 66 (emphasis added).   The Memorandum of Sale later notes that the word "including" is to be interpreted as nonexclusive. *Id.* at 83.   Thus, "contracts," such as the GSA, though not specifically enumerated, could be contemplated by this broad and nonexclusive list.

[17] *Id.* at 66.   The Court also couldn't have known whether the GSA was an "Acquired Asset" at the time it denied Aperia's motion-in-limine request to rule on the ambiguity of the Memorandum of Sale because, as the Court stated in its ruling, the "record . . . [was] not sufficiently developed to make determinations about the ambiguity of contractual terms."   Doc. 120 at 6.   This was, at least in part, due to the absence of Schedule 2.2(g).

[18] Doc. 206 at 66, 68 (stating that "Excluded Assets" include "the Contracts set forth on Schedule 2.2(g)").

Excluded Asset.[19]  Every Acquired Asset that was not an Excluded Asset was sold in the Memorandum of Sale.  And every Acquired Asset of eVance Processing that was sold in the Memorandum of Sale was sold to eVance, Inc.  Thus, the Memorandum of Sale is unambiguous: eVance, Inc. purchased the GSA.

eVance, Inc. points to extrinsic evidence that, it claims, shows the intent of both buyer and seller to exclude the GSA from the Memorandum of Sale,[20] but the Court cannot consider extrinsic evidence as a matter of law.  Under New York law, which governs the Memorandum of Sale, "[e]xtrinsic or parol evidence is admissible only if a court finds an ambiguity in the contract," and it "is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."[21]  The contract is clear, so even if the parties later claimed their *intent* was not what the words on the page *mean*, New York law prohibits the Court from crediting their proffered (and self-serving) interpretation of the contract's text over the text itself.[22]

---

[19] *Id.* at 90 (listing, in a recitation of "Excluded Contracts," "Contracts of Excel Corporation with . . . Aperia," but not listing contracts between eVance Processing and Aperia).  eVance, Inc. argues that Schedule 2.2(g) is ambiguous "because Excel Corporation had no contract with Aperia."  Doc. 208 at 7.  eVance, Inc. offers no citation to support this assertion.  But even assuming it is true, whether Excel Corporation and Aperia had any existing contracts at the time of the Memorandum of Sale constitutes extrinsic evidence beyond the four corners of the contract.  Since the Memorandum of Sale and Schedule 2.2(g) are unambiguous on their face, the Court need not—and under New York law, cannot—look to extrinsic evidence beyond the four corners of the document in its interpretative analysis.

[20] *See* Doc. 208 at 6, 8–9 (stating that the president of the company selling eVance Processing and the president of eVance, Inc. both testified that the Memorandum of Sale "did not sell the GSA to eVance, Inc.").

[21] *Donohue v. Cuomo*, 38 N.Y.3d 1, 13 (N.Y. 2022) (cleaned up).

[22] The Court has followed precedent requiring it to apply Texas law to determine if there is ambiguity and New York law to then interpret an unambiguous contract.  But even if only Texas law applied or only New York law, it would not matter to this ruling.  Texas and New York law both apply the same principles the Court uses here.

As a final note, the Court acknowledges that the jury reached a different conclusion, answering "No" to the question "Did eVance, Inc. purchase the [GSA]?"[23] But the jury's answer does not dictate the Court's conclusion here because the jury, in answering this question, had before it all the extrinsic evidence that the law plainly prohibits the Court from weighing now.  The jury heard parties to the contract state that they did not believe the Memorandum of Sale included the GSA, and the Court instructed the jury to consider that evidence; here, the Court may consider none of those statements.  The Court's analysis is limited to the words within the four corners of the unambiguous Memorandum of Sale.  It would have been improper for the jury to look only to the GSA's text and disregard all other evidence it heard at trial.  Now, in a different role and at a different stage of the case, the Court finds itself in the opposite position—it would be improper for the Court to consider any extrinsic evidence beyond the GSA's text.

This compels the Court to reach a different result than the jury reached, but it does not indicate that the Court's different result is unjust.  Asking a court to decide a question of law—e.g., "What does this contract mean?"—is not the same as asking a jury to decide a question of fact—e.g., "Did A purchase something from B?"  The answer is different because the question is different.

The Court **GRANTS** Aperia's Motion for Interpretation of Unambiguous Contract.  The Court finds that the Memorandum of Sale, as completed by Schedule 2.2(g), is unambiguous as to whether eVance, Inc. purchased the GSA, and

---

[23] Doc. 137 at 14.

the Court finds that eVance, Inc. did, in fact, purchase the GSA.

**IT IS SO ORDERED** this 12th day of May, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE