UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |  | |
|---|---|---|---|
| APERIA SOLUTIONS, INC., | § | | |
| | § | | |
| *Plaintiff,* | § | | |
| | § | | |
| v. | § | Civil Action No. 3:18-CV-3276-X | |
| | § | | |
| EVANCE, INC., | § | | |
| | § | | |
| *Defendant.* | § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Aperia Solutions, Inc.'s motion for summary judgment on its breach of contract claim against Defendant eVance, Inc. ("eVance") (Doc. 235). The Court **GRANTS IN PART** the motion only as to the proper measure of Aperia's alleged breach of contract damages and **DENIES IN PART** as to all other disputes.

### I. Factual Background

The Court has previously recounted this case's facts and procedural history in depth and will summarize that history here.[1] Aperia contracted with eVance Processing, Inc. ("eVance Processing") to provide Internet-based reporting and management systems in a General Services Agreement ("GSA"). eVance Processing fell behind on payments and was ultimately foreclosed on. The OLB Group, Inc. purchased its assets, through a subsidiary, eVance, Inc. ("eVance") in April 2018.[2] At

---

[1] *See, e.g.*, Doc. 193 at 1–4.

[2] The Court refers to eVance, Inc. as "eVance" throughout this Order. Any mention of eVance Processing will name it in full.

the time of sale, eVance Processing owed Aperia $56,847.84 (the "Old Debt"). Over the next few months, Aperia provided services and eVance sent payments. This case centers on whether Aperia was paid for the services it provided from April 2018 through September 2018 (the "New Debt"). Aperia claims eVance never paid for the New Debt and that the payments which eVance *did* make were for the Old Debt, which Aperia alleges eVance orally agreed to pay. eVance, on the other hand, claims there was no oral agreement binding it to pay the Old Debt, and the payments it made were for the New Debt.

After eVance discontinued Aperia's services, Aperia sued eVance for breach of contract, promissory estoppel, and quantum meruit. The case went before a jury, and the jury returned a verdict for Aperia, finding that eVance had not purchased the GSA but had ratified it. The jury further found that eVance breached the ratified GSA and awarded damages to Aperia. The Court entered judgment for Aperia based on the verdict and denied eVance's motion for a new trial. On appeal, the Fifth Circuit reversed and remanded, agreeing with eVance that ratification was "an erroneous legal theory" because "[a]s a matter of law, eVance, Inc.—which was not a party to the GSA (nor even existed as an entity at the time the GSA was created)—could not ratify it.[3] The Fifth Circuit remanded the case for a new trial to "answer whether Smith entered into an oral agreement or whether the same damages could be recovered under an alternative legal theory."[4] Since the Fifth Circuit's ruling, the

---

[3] *Aperia Sols., Inc. v. eVance, Inc.*, No. 21-10683, 2022 WL 2116001, at *4 (5th Cir. June 13, 2022).

[4] *Id.*

Court has determined that any alleged oral contract would be governed by Georgia state law and that eVance purchased the GSA when it signed the Memorandum of Sale.

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party,[5] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] "A fact is material if it 'might affect the outcome of the suit,'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[7]

## III. Analysis

Aperia argues the record evidence is sufficient for it to prevail on its breach of contract claim. To support a claim for breach of contract under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach."[8]

---

[5] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

[6] FED. R. CIV. P. 56(a).

[7] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8] *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015) (citing *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.)).

Aperia contends the GSA is a "valid and enforceable contract" between Aperia and eVance because eVance purchased the GSA under the Sale Memorandum.[9] eVance doesn't dispute this, and the Court held as much previously.[10]

As for performance, Aperia states that it provided services to eVance from April 2018 through September 2018.[11] This is also undisputed.

Now to breach. Aperia's theory of the case is that the payments made by eVance were for the Old Debt—which it was bound to pay by an oral agreement—and that because eVance didn't pay for the New Debt, eVance breached the GSA.[12] Aperia concedes that eVance was not required to pay the Old Debt pursuant to the Sale Memorandum but that rather it was an oral agreement made by Patrick Smith, an eVance employee, that bound eVance to pay the Old Debt.[13] As Aperia sees it, there is "overwhelming evidence" that eVance agreed to pay the Old Debt.[14] Aperia's story is that a few weeks after eVance purchased eVance Processing in early April 2018, an eVance representative, Patrick Smith, negotiated with Aperia to keep providing internet services by paying the Old Debt. As evidence, Mr. Smith emailed an Aperia representative, Mark Hayward, in late April 2018 stating "I will make sure we get caught up as soon as possible."[15] On April 30, 2018, Mr. Hayward emailed Mr. Smith

---

[9] Doc. 236 at 10.

[10] Doc. 217. The Court notes (and both parties agree) that its finding that eVance purchased the GSA has no bearing on whether eVance was bound to pay the Old Debt.

[11] Doc. 236 at 11.

[12] *Id.* at 12–13.

[13] *Id.* at 12.

[14] *Id.* at 20.

[15] Doc. 237 at 55.

with information on the "payables outstanding" for the invoices from December 2017 and January through March 2018.[16] Then, a month later, Mr. Smith emailed Aperia stating, "[w]e wired $7,300.62 to complete the jan-18 payment. We will wire the feb-18 payment on Friday."[17] Mr. Hayward proposed a payment schedule, and Mr. Smith responded, "[w]e will be able to maintain this schedule."[18] By June 22, 2018, Aperia claims that eVance had paid off the Old Debt entirely.[19] Aperia seems to hang its hat on the fact that eVance's payments matched the invoices "to the cent" from the Old Debt, such that the "only plausible explanation" for eVance's payments was to pay off the Old Debt, leaving the New Debt—for services provided from April 2018 through September 2018—unpaid.[20]

    eVance's version of the story is different. eVance claims "[t]he oral agreement was allegedly formed during a meeting" between Mr. Hayward, Mr. Smith, and one other eVance representative, Ronny Yakov, shortly after the foreclosure auction.[21] But both Mr. Smith and Mr. Yakov denied ever forming an oral contract. eVance points to testimony from Mr. Smith in which he was asked if he ever had a discussion with Mr. Hayward and agreed to pay the Old Debt. Mr. Smith answered, "[w]e never agreed to pay the debt owed by eVance Processing."[22] Mr. Yakov likewise stated,

---

[16] Doc. 237 at 71–72.

[17] *Id.* at 81.

[18] *Id.* at 56.

[19] Doc. 236 at 8.

[20] *Id.* at 14, 16.

[21] Doc. 246 at 3.

[22] *Id.* at 4 (quoting Doc. 168 at 556:19–20).

"pretty much like the day after . . . we purchased the assets . . . [Mr. Hayward] came to the office [and] said, you know, we have to sign the agreement. I said, look, whatever happened in the past, it's in the past. We have nothing to do with this."[23] eVance's theory of the case is that since it was under no obligation to pay the Old Debt, its payments were for the New Debt.  eVance relies on Mr. Smith's own testimony as to why the payments matched prior invoice amounts when there were references to the prior invoices in the emails.  When asked if he understood "the references to invoice numbers or dates [in Mr. Hayward's emails] to reflect an agreement that eVance, Inc. was going to pay the debts of eVance Processing," Mr. Smith testified that he did not.[24]  eVance explains that Mr. Smith "made good faith payments based on eVance Processing's prior invoices" because Mr. Hayward had indicated he would lose his commissions on the eVance account if the Old Debt wasn't paid off.[25]  Both Mr. Smith and Mr. Yakov testified to this end.[26]  In Mr. Yakov's words, Mr. Hayward "was pushing me and [Mr. Smith]" because Mr. Hayward had "to the pay the tuition for [his] kids . . . in college, they [were] going to take back [his] commissions."[27]  eVance points to a discrepancy in Mr. Hayward's testimony about whether Aperia would receive a cancellation notice if the Old Debt wasn't paid.[28]

---

[23] Doc. 168 at 586:19–24.

[24] *Id.* at 560:5–12.

[25] Doc. 246 at 4.

[26] *See* Doc. 168 at 555:12–25, and 624:20–625:5.

[27] *Id.* at 624:20–625:5.

[28] Doc. 246 at 5–6 (eVance points to Mr. Hayward's declaration stating that he "informed Smith that [he] needed to get the Outstanding Debt paid or a notice of cancellation would be issued" and Mr.

Aperia, on the other hand, would like the Court to disregard Mr. Smith's and Mr. Yakov's "outlandish, self-serving" testimony for "contradict[ing] every shred of evidence in this case" under the sham affidavit doctrine.[29] For starters, that rule is used to weed out an affidavit that conflicts with sworn testimony, which, as Aperia concedes, "is clearly not the situation here."[30] But more importantly, it's the "jury's role" to "resolv[e] questions of credibility," not the Court's.[31] Aperia argues that allowing "testimony not even remotely based in reality" to create a genuine dispute of material fact would make "obtaining summary judgment in Texas . . . nigh impossible."[32] Here, the Court is tasked with viewing all facts and inferences "in the light most favorable" to eVance and "refrain[ing] from making credibility determinations or weighing the evidence."[33] In short, the evidence cited to by eVance creates a genuine dispute of material fact as to whether it was orally obligated to pay the Old Debt.

The Court further isn't persuaded by Aperia's argument based on the Court's directed verdict motion from the last-go around. At the end of Aperia's case-in-chief, eVance moved for a directed verdict as to the Old Debt, arguing that "if there was an agreement, for eVance, Inc. to pay the outstanding debt, it paid the outstanding

---

Hayward's subsequent deposition statement that he didn't tell Mr. Smith that eVance would receive a notice of cancellation if the Old Debt wasn't paid).

[29] Doc. 247 at 2–3.

[30] *Id.* at 3.

[31] *See Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (cleaned up).

[32] Doc. 247 at 4.

[33] *Butts v. Martin*, 877 F.3d 571, 581–82 (5th Cir. 2017) (cleaned up).

debt."[34]  So when the Court granted the directed verdict motion and reasoned "I do think that this is a math question with one-sided evidence where the payments were credited to the outstanding debt,"[35] the motion before the judge was not whether there was an oral contract for eVance to pay the Old Debt.  That question is new and goes to the heart of whether eVance breached the GSA by failing to pay for services rendered between April and September 2018.

    Finally, the parties dispute Aperia's alleged damages.  Aperia claims it's entitled to benefit-of-the bargain damages for the services it provided from April to September 2018—meaning the "entire amount of the unpaid invoices" less any amount eVance has paid toward the New Debt.[36]  eVance argues that Aperia is prohibited "from recovering the full value of its invoices" under the GSA because of the Section 11.1 "Limitation of Liability" provision stating that "neither party will be liable to the other party for any loss of profits."[37]  The Court is trying to make sense of how this lost-profits provision would apply to the New Debt invoices.  eVance argues that because the lost-profits provision does not include the exception carving out eVance's payment obligations like the neighboring "Damages Cap" provision does, the lost-profits provision applies to the New Debt invoices.[38]  As Aperia characterizes

---

[34] Doc. 168 at 512:23–513:2.

[35] *Id.* at 523:7–9.

[36] Aperia argues the benefit-of-the-bargain damages it should receive are the amount of the April to September 2018 invoices ($66,086.12) minus the money Aperia claims eVance *did* pay towards the New Debt ($10,469.52) for a total of $55,616.60.  Doc. 247 at 7–8.

[37] Doc. 246 at 9; *see* Doc. 237 at 27–28.

[38] Doc. 246 at 9;  *see* Doc. 237 at 28.  The GSA's Section 11.2 "Damages Cap" provision states, "EXCEPT FOR ANY DAMAGES RELATING TO . . . (v) CLIENT'S PAYMENT OBLIGATIONS

it, eVance wants the Court to "find the difference between the line-item cost of the services as set forth in the GSA and Aperia's actual cost in performing those services before assessing damages."[39] But eVance doesn't point to any caselaw that shows that the proper measure of Aperia's breach of contract damages would be the value of unpaid invoices minus any baked-in profit. Instead, eVance points to trial testimony about the variance in Aperia's profit margins on services—concluding that there is a fact question about how much of the full price of the New Debt invoices Aperia could recover.[40] The Court disagrees with eVance.

In interpreting the GSA, the Court "consider[s] the entire text, in view of its structure and of the physical and logical relation of its many parts," not just the lost-profits provision.[41] "[C]ourts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless . . . . No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."[42]

Here, Section 8.3 "Effects of Termination" of the GSA provides that eVance is obligated to pay "any undisputed accrued and unpaid charges for [s]ervices properly

---

UNDER ARTICLE IV . . . LIABILITY . . . SHALL NOT IN THE AGGREGATE EXCEED THE FEES PAID BY CLIENT TO VENDOR HEREUNDER FOR THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE MONTH IN WHICH THE CLAIM OR CLAIMS ARISE."

[39] Doc. 247 at 7.

[40] Doc. 246 at 9.

[41] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (Thompson/West 2012).

[42] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (cleaned up) (emphasis in original).

performed" by Aperia.[43]  Article IV of the GSA outlines the "Charges and Invoicing" payment structure between the two parties, and under Section 4.1, eVance agreed to "make payments for the [s]ervices in accordance with the Schedule of Fees."[44]  The GSA further provides that the "monthly written invoices" include "all fees and approved expenses contemplated by [the GSA]."[45]  The parties don't dispute that Aperia performed Internet-based reporting and management services for eVance from April to September 2018.  And eVance hasn't disputed the accrued amount of the April to September 2018 invoices.[46]  Had Aperia been asking for lost-profit damages of future invoices from September 2018 through the end of the GSA's three-year contract term, this may be a different story.[47]  But instead, Aperia is just seeking the value of the invoices for the months during which it provided services.

"Benefit-of-the-bargain damages 'derive from an expectancy theory' and 'evaluate the difference between the value that was represented and the value actually received.'"[48]  Looking at the whole contract, Aperia expected to receive the

---

[43] Doc. 237 at 26.

[44] *Id.* at 18.

[45] *Id.*

[46] *See* Doc. 246 at 9 (eVance arguing that if there was no oral contract for eVance to pay the Old Debt, then eVance has overpaid for the New Debt which totaled $66,086.12).  eVance does dispute, however, that those invoices have not been paid.

[47] *See Cont'l Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 476 (Tex. App.—Eastland 2003, no pet.) (holding that under a contract with both an early-termination provision that entitled a vendor to compensation according to a schedule of fees and a provision limiting liability for lost profits—like the GSA—a vendor was entitled to benefit-of-the-bargain damages for services it performed before the contract was terminated but could not recover the value of the contract for the remainder of the contract term after it was terminated).

[48] *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 275 (5th Cir. 2012) (quoting *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007)).

full amount of the invoices from April 2018 to September 2018. The Court finds that the proper measure of Aperia's breach of contract damages is the full amount of the allegedly unpaid invoices for services rendered between April and September 2018 minus any money eVance paid Aperia for the New Debt.[49] As such, the Court **GRANTS** Aperia's summary-judgment motion as to the proper measure of damages.

The Court finds that genuine disputes of material fact stand in the way of summary judgment on Aperia's breach of contract claim. Was there an oral agreement that eVance would pay the Old Debt? Did eVance pay the New Debt? With evidence pointing both ways, reasonable jurors could differ in their answers. As the Fifth Circuit held, "[t]he evidence might show" that there was a binding oral agreement, but "[t]he jury never answered whether an agreement was formed, yet it must do so in the first instance."[50] Thus, the Court **GRANTS IN PART** Aperia's motion for summary judgment only as to the proper method of calculating breach of contract damages, and **DENIES IN PART** as to all remaining disputes.

**IT IS SO ORDERED** this 25th day of March, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[49] And since Aperia forgoes its claim to post-termination damages in this motion, the Court need not address it here. Doc. 247 at 9.

[50] *Aperia Sols., Inc.*, 2022 WL 2116001, at *4.